# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EZRA HILL, | |
| Plaintiff, | |
| v. | 17 C 4699 |
| CITY OF HARVEY, et al., | |
| Defendants. | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are three motions to dismiss Plaintiff Ezra Hill's ("Hill") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants City of Harvey ("Harvey"), Officer Gregory Thomas ("Thomas"), Harvey Deputy Police Chief Jason Banks ("Banks"), Cook County, Assistant State's Attorney Liam Reardon ("Reardon") (collectively, "Defendants"). For the following reasons, the motions to dismiss are denied.

## BACKGROUND

The following facts are taken from Hill's complaint and are assumed to be true for purposes of this motion to dismiss. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The Court draws all reasonable inferences in favor of Hill. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

1

On March 12, 2014, at approximately 10:31 a.m., Eric Bond ("Bond") was driving a stolen Honda Civic ("the Civic") on Center Avenue, just north of East 146th Street in Harvey, Illinois when he spotted a black Oldsmobile Intrigue ("the Intrigue") behind him. Though Hill owned the Intrigue, he was not inside the car at the time, as he had lent it to Andrew White ("White") and Antonio Johnson ("Johnson") earlier that morning. Also in the Civic with Bond were Alquan McReynolds ("McReynolds") and Ahmad Thornton ("Thornton"). Due to a pre-existing conflict between the parties, White and Johnson emerged from the Intrigue and opened fire on the Civic. According to the complaint, White fired 6 bullets from a .38 Smith and Wesson Long Nose Revolver and Johnson fired 6 times from a .38 caliber Snub Nose Revolver.

Bond sped off in the stolen Civic after the melee, ultimately colliding with a Ford Mustang at the intersection of East 147th Street and Center Avenue. Bond, McReynolds and Thornton then separately fled the scene of the collision on foot and were each subsequently apprehended by Harvey Police Officers. White and Johnson drove away from the scene and parked in the driveway of White's residence in Harvey. Officers Banks and Thomas arrived at the White residence roughly 20 minutes after the shooting, where they encountered White and Johnson sitting in the Intrigue.

After arresting White and Johnson, Thomas searched the Intrigue and discovered a Benelli M4 semi-automatic shotgun ("the shotgun") in the trunk.

Thomas inventoried the shotgun as having six live rounds in it, which is the capacity for that particular weapon. After officers completed a search of the Intrigue, White and Johnson were transported to the Harvey police station. Upon arriving at the police station, White and Johnson participated in an identification lineup and then were subsequently separated - Johnson was placed in a cell, White in an interrogation room. According to the complaint, it is at this moment that Thomas, Banks and Reardon concocted their scheme to fabricate a case against Hill.

McReynolds was the first person to be questioned by Thomas and Reardon at approximately 5:03 p.m. on the evening of March 12. Following the interview with McReynolds, Thomas created a Police Continuation Report ("McReynolds report") that stated that McReynolds identified Johnson and White, but that "he did not see very clearly" another passenger in the Intrigue. However, the McReynolds report noted that McReynolds stated that the third person "appeared to be" Hill.

After their interview with McReynolds, Thomas and Reardon questioned Thornton at 5:17 p.m. According to another report prepared by Thomas, Thornton observed White driving the Intrigue, with Hill in the back seat and Johnson "standing next to the black Oldsmobile on the passenger's side…and pointing a black handgun toward the vehicle [sic] was occupied by him, Bond and McReynolds, Alquan." Thornton's report contradicted the McReynolds' report, the latter allegedly claiming that three individuals were outside of the car firing guns at the Civic.

Following their interviews with McReynolds and Thornton, Thomas and Reardon questioned Bond. Bond admitted to Thomas that on the morning of March 12, 2014, he gave a fake name to the arresting officer, Officer Jeffery Tibbs ("Tibbs"), because he had an outstanding warrant. Following his interview with Bond, Thomas created a report to memorialize their discussion. In the report, Bond allegedly claimed that he observed White exit from the driver's seat of the Intrigue, Hill exit from the driver's-side back seat and Johnson exit the front passenger door. The report further stated that Bond saw all three men with weapons and all three fired at the Civic. The report specifically stated that Bond observed Hill with a "large gun."

After interviewing Bond, Thomas and Reardon questioned White. Present with White during the discussion was his mother Elizabeth Kellogg ("Kellogg"). During the questioning Hill alleged that Thomas and Reardon threatened White to agree to their version of events or risk being charged with multiple counts of attempted murder. Thomas and Reardon pressured then fifteen-year-old White to state that "Hill was in the car and fired the shotgun four times." Banks, also in the room for part of the questioning, told White that they intended to tie the alleged crime to Hill. Banks implored White to call Hill on his cellular phone in an effort to entrap him. The complaint is unclear as to whether White ever placed the call to Hill. However, the complaint alleges that Thomas and Reardon threatened White that he could be tried and sentenced as an adult on multiple counts of attempted murder if he did not support their version of events.

Thomas and Reardon prepared a statement for White to sign at 12:22 a.m., on Thursday, March 13, 2014, that implicated Hill. White did not read the statement before signing it. However, Hill contends that White repeatedly told Thomas, Banks, and Reardon that Hill was not with them.

Hill alleges that "at no point did the [Harvey policed department] identify or produce any physical evidence that could link Hill to the crime." The complaint is imprecise as to what evidence was presented to the grand jury that indicted Hill. The complaint does make clear that both McReynolds and Thornton testified before the grand jury, but both delivered testimony that Hill argues contradicted the official reports prepared by Thomas. Specifically, Hill alleges that McReynolds testified that only White and Johnson emerged from the Intrigue and fired on the Civic. Moreover, McReynolds also testified that after identifying White and Johnson in a lineup, he was instructed by Thomas and Banks to pick Hill out of a photo composite with pictures of Hill and five other men. McReynolds admitted to not knowing Hill well, but picked Hill from the photo composite only because he was instructed to do so. On the grand jury witness stand, when asked directly if he saw Hill shooting at him, McReynolds responded "no." When asked if he saw Hill in the car, he responded "I don't think I saw him in the car."

Thornton also admitted to the grand jury that he could only recall "about like 10, 11" shots fired from the Intrigue, and relayed that to Thomas. According to Hill, Thomas insisted in his report, that 16 shots were fired – 12 from the revolvers, four

from the shotgun. At no point in Thornton's grand jury testimony did he identify Hill as a participant in the crime. Instead, Thornton's only testimony about Hill was merely that he knew who Hill was, through a mutual acquaintance. At some point, which is unclear from the complaint, the grand jury returned an indictment for Hill's arrest. On September 3, 2014, Hill was arrested and charged with attempted murder. Hill went on trial 31 months later. On March 8, 2017, Hill was found not guilty.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but must provide enough factual support to raise his right to relief above a speculative level. *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

## DISCUSSION

I.   **Count I—42 U.S.C. § 1983 against Thomas, Banks, and Reardon**

Hill alleges that Thomas, Banks, and Reardon violated his Fourth and Fourteenth Amendment rights to due process and a fair trial. Specifically, Hill contends that his pretrial confinement violated the Fourth Amendment because Defendants lacked the necessary physical evidence or probable cause to arrest him. Similarly, Hill claims that Defendants fabricated and coerced evidence resulting in his pretrial detention in violation of his due process rights under the Fourteenth Amendment.

In response, Defendants contend that the fabrication of evidence does not give rise to a cognizable due process claim in the Seventh Circuit. Until recently, Defendants would have been correct. However, new case law from the Seventh Circuit has dispensed with that view. As the law now stands, "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012); *see also Saunders–El*, 778 F.3d at 560 (observing that if "a police officer . . . manufactures false evidence," and "that evidence is later used to deprive [a person] of [his] liberty in some way," that person may bring a due process claim under § 1983); *Armstrong v. Daily*, 786 F.3d 529 (7th

7

Cir. 2015) (observing that a due process claim may lie when "a law enforcement official [ ] acts in bad faith to undermine the reliability of a trial, such as by manufacturing false evidence, arranging for perjured testimony, or destroying exculpatory evidence"). Thus, this Court concludes that the Seventh Circuit has affirmed that a due process claim exists when fabricated evidence is used to deprive a criminal defendant of liberty, even when the prosecution of that defendant is ultimately unsuccessful.

Defendants argue that even if Hill could bring a due process claim, he is unable to show that their individual conduct caused his alleged injury. Defendants misunderstand Hill's complaint. Hill is not alleging that the actions of one individual Defendant caused his harm, but instead that the Defendants' actions collectively caused him to be confined unjustly for 31 months. In *Pinkerton v. United States*, the Supreme Court held that in a conspiracy "'an overt act of one [conspirator] may be the act of all without any new agreement specifically directed to that act.'" 328 U.S. 640, 646–47, 66 S. Ct. 1180, 1184, 90 L.Ed. 1489 (1946) (quoting *United States v. Kissel*, 218 U.S. 601, 608, 31 S. Ct. 124, 126, 54 L.Ed. 1168 (1910)). A defendant is responsible for a substantive offense committed by his coconspirators unless the criminal act "was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project, or was merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Id.* at 647–48, 66 S.Ct. at 1184. This rule applies even if the

defendant does not participate in the substantive offense or have any knowledge of it. *Id*.

Here, Hill is alleging that the only reason he was ever arrested, detained and indicted is because Defendants entered into a conspiracy "to tie the . . . crime to Hill." In the complaint Hill alleges that Banks: i) presented McReynolds with a photo composite with pictures of Hill and five other men from which Thomas instructed McReynolds to identify Hill; and ii) told White that he intended to tie Hill to the shooting and asked White to call Hill on the phone and "entrap him." Similarly, Hill contends that Thomas: i) fabricated eye witness statements; ii) secured a coerced confession by White; iii) and manipulated photo lineups all in an effort to frame Hill. Lastly, Hill alleges that Reardon, along with Thomas, pressured White to sign a false statement implicating Hill in the shooting. While the complaint does not make entirely clear how much of this information was provided to the grand jury, the complaint sufficiently alleges enough factual allegations to support the notion that but for Defendants' actions Hill would not have been indicted. Thus, Hill has put forth a plausible claim that allows this Court to draw the reasonable inference that the Defendants' collective actions deprived Hill of his liberty. *Iqbal*, 556 U.S. at 678. For that reason, Defendants' request to dismiss Count I is denied.

It should also be noted that Reardon argues that he is immune from suit because absolute immunity extends to the prosecutor as advocate, for actions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424

U.S. 409, 431 (1976). However, Hill argues that Reardon has no immunity because his actions were "investigative and unrelated to the preparation and initiation of judicial proceedings." *Id.* The Supreme Court has said that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274, 113 S.Ct. 2606 (footnote omitted); *see Whitlock*, 682 F.3d at 580 (noting that the "focus of [the] case, as we have narrowed it, is exclusively on the period before probable cause supported the prosecution, when a prosecutor is unquestionably acting in an investigative role"). Hill argues that Reardon, along with the other Defendants, never had probable cause to arrest him.

Hill's complaint alleges that Reardon was directly involved in obtaining the false evidence and testimony relied on to charge Hill. According to Hill, "Reardon was engaged in the investigation every step of the way, before any probable cause existed." Specifically, Hill contends that Reardon "engaged in coercion of witness, falsifying evidence, and manipulating reports." These allegations are sufficient to defeat Reardon's motion to dismiss on the grounds of absolute prosecutorial immunity. *Whitlock*, 682 F.3d at 577–80 (stating that a prosecutor does not have absolute immunity from a due process claim based on his pre-probable cause fabrication of evidence). At this stage of the pleadings, we are required to assume all of Hill's factual allegations as true, *Murphy*, 51 F.3d at 717, and draw all reasonable inferences in favor of Hill. *Tamayo*, 526 F.3d at 1081. Therefore, the complaint as pled sufficiently demonstrates that Reardon was acting in the capacity of an

investigator, performing functions normally performed by a police officer or detective. Thus, Reardon is not entitled to prosecutorial immunity.

## II. Count II—Conspiracy

For a § 1983 conspiracy claim, Hill must allege that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Because Hill's conspiracy claims are not grounded in fraud, they are not subject to the heightened pleading requirements of Rule 9(b). But Hill must allege the parties, the general purpose, and the approximate date of the conspiracy. *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). Hill's conspiracy claims are sufficiently pled because they incorporate his other allegations. Taken together, these allegations describe the Defendants working together to go after Hill from the inception of this case. Hill alleges that "within 24 hours of the crime, Thomas, Banks, and Reardon worked together to interview Andrew White and coerce him into signing a false statement implicating Hill." During the interview, Banks "candidly told White that they intended to tie the alleged crime to Hill, at one point imploring White to call Hill on his cellular phone and entrap him." Two and a half years later, on the morning of Hill's 2017 criminal trial, Thomas told White "if they couldn't make the attempted murder charge against Hill stick, they would 'get' Hill on something else." These allegations are sufficient to allege that the Defendants reached an agreement to deprive Hill of his constitutional rights. Therefore, assuming

11

facts in the light most favorable to Hill, we deny Defendants' request to dismiss Count II.

## III. Count III—*Monell*

Hill asserts a *Monell* claim against the City of Harvey. Harvey moves to dismiss the *Monell* allegations as improper and baseless. As both sides agree in their briefs, there are three recognized ways for Hill to assert municipal liability: "(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'" *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (quoting *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)). The Seventh Circuit has not adopted any bright line rules in defining the term "widespread custom or practice" except to state that the allegedly unconstitutional conduct "must be more than one instance." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Hill alleges that Harvey maintains a wide-spread practice "of fabricating charges against innocent arrestees and other misconduct." Specifically, Hill claims that Harvey: "[c]onduct[s] unlawfully coercive interrogations of witnesses, suspects and arrestees to obtain confessions and false implication of others; unlawfully manipulate[s] juveniles and teenagers to falsely confess and falsely implicate others,

including by utilizing the unlawful tactics; produc[es] false reports, and giv[es] false statements and testimony about interrogations, confessions, and witness statements; and pursu[es] and obtain[s] prosecutions and detentions based on statements obtained through unlawful interrogations." Taken together with Hill's detailed claims about the alleged misconduct of Thomas and Banks, these allegations are sufficient to withstand Harvey's motion to dismiss. *See Nebel v. City of Burbank*, No. 01 C 6403, 2003 U.S. Dist. LEXIS 4942, at \*16 (N.D. Ill. Mar. 27, 2003) ("Because there is no heightened pleading requirement in § 1983 municipal liability cases, [Plaintiff]'s conclusory allegations are sufficient to put the defendants on notice of the claims against them and to withstand the motion to strike and dismiss."). Thus, Harvey's motion to dismiss Count III is denied.

## IV. Count VI—State Law Civil Conspiracy Claim

In Illinois, "the elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004). As with civil conspiracy claims under § 1983, Illinois courts acknowledge that "[a] conspiracy, by its very nature, is secretive" and "the agreement is rarely susceptible to direct proof." *Reuter v. MasterCard Int'l, Inc.*, 397 Ill. App. 3d 915, 927–28, 921 N.E.2d 1205, 1216 (2010). Thus, Illinois courts permit a conspiracy to be established "from circumstantial

evidence and inferences drawn from evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances." *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 66, 645 N.E.2d 888, 895 (1994). "The conspiracy may be inferred if parties pursue the same object by common means, one performing one part and another performing another part." *Rodgers*, 315 Ill. App. 3d at 350, 733 N.E.2d at 843.

Hill contends that Defendants conspired to maliciously prosecute him. Defendants do not make any new arguments against the state law conspiracy claim. The Court's reasoning with regard to the § 1983 conspiracy claim applies with the same force here. The Court, therefore, denies Defendants' motion to dismiss on this claim.

## V. Count VII—State Law Malicious Prosecution

In Illinois, the elements of malicious prosecution are: "(1) the defendants commenced judicial proceedings, (2) for which there was no probable cause, (3) the proceeding[s] were instituted or continued maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff sustained an injury." *Saunders–El*, 778 F.3d at 561. Banks was the only Defendant to challenge the allegations underpinning this count. Therefore, the remaining Defendants have waived their argument and their motions to dismiss are denied. *See Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 810 (7th Cir. 2001). Here, Banks claims that Hill failed to identify any false claims or fabricated evidence attributable to Banks that was used to indict or

prosecute Hill, as required under Illinois law to bring an action for malicious prosecution. *Davis v. Temple*, 284 Ill. App. 3d 983, 990 (1996). Banks misreads the complaint. Hill is alleging that Defendants conspired to frame Hill for the crime without probable cause. Therefore, any testimony or evidence put forth by one Defendant in furtherance of the conspiracy's goal can be held against all Defendants. *Pinkerton,* 328 U.S. at 646–47. Hill has sufficiently alleged that Defendants lacked any actual evidence against him. Furthermore, Hill alleges that Defendants fabricated photo lineups, witness statements, and other evidence to incriminate him. These allegations are sufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678. Banks motion to dismiss Count VII is denied.

## CONCLUSION

For the aforementioned reasons, Defendants' motions to dismiss are denied. It is so ordered.

ENTER:

DATE: January 3, 2018

_____

Charles P. Kocoras
United States District Judge