IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Ezra Hill, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 cv 4699 |
| | ) | |
| v. | ) | The Honorable Charles P. Kocoras |
| | ) | Presiding Judge |
| City of Harvey, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THE COOK COUNTY DEFENDANTS' REPLY IN SUPPORT OF SUMMARY JUDGMENT**

Defendants, Assistant State's Attorney Liam Reardon, Assistant State's Attorney Ed Murillo and Cook County (collectively "Cook County Defendants"), by their attorney, Kimberly M. Foxx, Cook County State's Attorney, pursuant to Fed. R. Civ. P. 56(a), hereby submits their reply in support of the Cook County Defendants' Memorandum in Support of Summary Judgment.

**1. Plaintiff has Failed to Abide by Local Rule 56.1(b)(3)(B).**

Before addressing the specific arguments proffered by Plaintiff, Plaintiff's actions necessitate addressing his complete disregard for LR 56.1. Rule 56.1(b)(3) governs the nonmovant's response and requires "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting material relied upon…" LR 56.1(b)(3)(B). Because specific references to the record are required, general and argumentative denials are insufficient to rebut a movant's facts. *Malec v. Sanford,* 191 F.R.D. 581, 583–84 (N.D. Ill. 2000). As such, the failure to rebut with specific references to the record is "equivalent to admitting the movant's case." *Id*. ("Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually

1

summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted."). As has been previously held, "[t]his rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire." *Malec,* 191 F.R.D. at 583–84.

Turning to Plaintiff's 56.1(b)(3)(B) response, virtually every response runs afoul of the rule by being argumentative, non-responsive or evasive, and often-times both. *See* Pls.' Resp. to Cook Cnty. Defs.' SOF, ECF No. 161 ("P's SOF Resp."). As for Plaintiff's argumentative responses, many of which go on for *multiple pages*, the examples are simply too many to list. In the interests of efficiency, those most typical of this violation include Plaintiff's responses to paragraphs two (2), twenty (20) through twenty-three (23), twenty-five (25), twenty-nine (29), thirty-eight (38), forty-one (41), forty-two (42), forty-six (46), forty-eight (48) and fifty (50). In fact, some of Plaintiff's responses are so astoundingly argumentative that they often *concede the fact asserted* by "admit[ing] that the record so states" before proffering portions their closing argument. *See*, *e.g.*, P.'s SOF Resp. at ¶¶ 27, 28, 31-34, 36, 39.

As for Plaintiffs' evasive or non-responsive answers, all of which are likewise argumentative, these also are too numerous to list. However, they are most egregiously exemplified by Plaintiff's attempt to negate the dispositive fact that he was simultaneously incarcerated for a forgery warrant when he was arrested for attempt murder. *Id*. at ¶¶ 44, 50. Instead of simply admitting what is obvious from the record, Plaintiff takes great steps to evade answering the question by arguing ancillary points without citation to the record, all the while claiming that the asserted fact is "irrelevant" and an effort to "smear" the Plaintiff. *Id*. at ¶ 44. In fact, Plaintiff is so evasive on this point that he disputes that Cook Co.'s Ex. W establishes that Plaintiff was simultaneously taken into custody for the forgery warrant, while completely ignoring Cook Co.'s

2

exhibit CC, the booking card which unequivocally establishes the fact. *Id.* As discussed more thoroughly below, *see infra* Section 4(c), Plaintiff has engaged in these tactics because Seventh Circuit precedent establishes that this fact is dispositive of every single claim brought by Plaintiff.[1]

"The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner; it is not intended as a forum for factual or legal argument." *Malec*, 191 F.R.D. at 585. Plaintiff completely ignores this admonition and instead proffers his closing argument in lieu of valid factual disputes. As a result, the Cook County Defendants' facts should be deemed admitted in their entirety. Because the Cook County Defendants' facts and supporting memorandum adequately establish that judgment on their behalf is proper, the Cook County Defendants are entitled to summary judgment on all claims.[2]

### 2. ASA Murillo is entitled to Absolute Immunity.

Plaintiff's argument that ASA Murillo fabricated a "fact sheet" and therefore is not entitled to prosecutorial immunity is flawed in two fundamental respects: 1) a prosecutor's fact sheet is not 'evidence' that can be fabricated and 'used' against a criminal defendant; and 2) even if the fact sheet was fabricated and used against Plaintiff, Murillo is still entitled to absolute immunity.

A fact sheet (aka 'data sheet') is an internal document generated by the assigned ASAs to track the case's progress. Cook County Defs.' Statement of Facts ("SOF") at ¶ 39; *see also* SOF,

---

[1] Plaintiff correctly points out that the Cook County Defendants' mistakenly cited to Ex. BB for the first sentence of paragraph forty-four (44) of its SOF. *See* P.'s SOF Resp. at ¶ 44. Although the proper citation should have been to Ex. H (using the same page citations), this mistake fails to negate the fact that the booking card (Ex. CC) and other citations to the record clearly establish that Plaintiff was simultaneously detained due to the forgery warrant.

[2] Plaintiffs' persistent violation of LR 56.1(b)(3)(B) in their responses is not an isolated occurrence. Rule 56.1(b)(3)(C) sets out the requirements for a nonmovant's statement of additional facts, which are identical to the moving party's LR 56.1(a) statement. *Malec*, 191 F.R.D. at 584. Therefore, the failure to abide by 56.1(b)(3)(C) will result in the failure to assert the fact proffered. *Id*. Plaintiff's statement of additional facts, much of which is strikingly argumentative, fairs no better than their response to the Cook County Defs.' Statement of Facts. *See* Cook Cnty. Defs.' Reply to P.'s Statement of Add. Facts, ECF. No. 164.

Ex. AA. Included in the fact sheet are notations made by the felony review ASAs about any evidence that could assist in their review. *Id*. As the case progresses through the legal system, various ASA at different stages of the case can add and edit the fact sheet to include new details. *Id*. The fact sheet is then used by other ASAs as reference point for what has been done on the case. *Id*. Other information found in a fact sheet can include the personal identifying information of various individuals and correspondence between the CCSAO and the witnesses. *Id*. In sum, the sheet is a modernized computer-generated document that has replaced the hand-written notes of the prosecutors. SOF, Ex. B at 103:8-22.

The danger of fabricated evidence such as police reports is that they can provide the causation for a deprivation of liberty. *Whitlock v. Brueggemann*, 682 F.3d 567, 583 (7th Cir. 2012) ("The actions of an official who fabricates evidence that later is used to deprive someone of liberty can be both a but-for and proximate cause of the due process violation. Without the fabrication, the prosecuting attorney would have had no tainted evidence to introduce at trial."). A fact sheet, however, can do no such thing. As is evident from viewing the fact sheet, these documents are the internal work product of the Cook County State's Attorney's Office ("CCSAO"). Unlike a police report, which is a public document containing facts that can be used at trial, the fact sheet does not provide the causation for a deprivation of liberty. Instead, the fact sheet simply tracks and summarizes the causation *already procured*. In fact, even if the ASAs never memorialized the progress of the case, Plaintiff still would have been arrested and detained based on the investigation conducted. Because the fact sheet is not 'evidence' that was 'used' against Plaintiff, it cannot form the basis of any cognizable claim against Murillo (or Reardon).[3]

---

[3] Although, for purposes of immunity, it does not matter whether Reardon or Murillo actually drafted the portions of the fact sheet alleged to have been fabricated, Plaintiff has failed to establish that either prosecutor authored the particular portion of the fact sheet complained-of. *See* Cook Cnty. Defs.' Reply to P.'s Local Rule 56.1(b)(3)(C) Statement of Add. Facts at ¶¶ 40, 65.

Despite Plaintiff's mischaracterization of the fact sheet, even if the fact sheet was fabricated and somehow used against Plaintiff, ASA Murillo (and ASA Reardon) is still entitled to prosecutorial immunity. Evidencing his fundamental misunderstanding of prosecutorial immunity, Plaintiff, in claiming this alleged fabrication predated probable cause, relies on the language in *Buckley* that, "[a] prosecutor neither is, not should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993); *see* Plaintiff's Resp. at pp. 9-10, ECF No. 162. Plaintiff's reliance on this quotation ignores the context in which it was made, as well as footnote five (5) of the *Buckley* opinion which holds that the presence or absence of probable cause is not dispositive. *Buckley,* 509 U.S. at 273 n.5. In fact, it is a central tenant of prosecutorial immunity that certain core prosecutorial functions are immunized even in the absence of probable cause. *Id*. The most illuminating example is the immunity afforded prosecutors when initiating charges without probable cause. *Id*.; *see also Imbler*, 424 U.S. at 421-22. In fact, other Circuits have warned against taking the *Buckley* Court's quotation out of context in the exact manner Plaintiff has done.[4] Plaintiff's reading of *Buckley* would overrule almost a century of precedent immunizing prosecutions without probable cause, something the *Buckley* Court clearly did not do. *See Yaselli v. Goff*, 275 U.S. 503 (1927) (holding prosecutors immune from bringing prosecutions in the absence of probable cause). As a result, Plaintiff's argument that the absence of probable strips a prosecutor of immunity when initiating a charge (or documenting the same) is patently incorrect.

---

[4] *See, e.g., Prince v. Hicks*, 198 F.3d 607, 614 (6th Cir. 1999) ("As we noted above, the Supreme Court wrote in *Buckley* that a prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested. It is important to read this sentence in the context of the *Buckley* decision in its entirety. A footnote in *Buckley* following the above-quoted sentence clarifies a point that Prince fails to recognize….. The dividing line is not, as [Plaintiff] argues, the point of determination of probable cause. Instead, the dividing line is the point at which the prosecutor performs functions that are intimately associated with the judicial phase of the criminal process.") (internal citations omitted).

Consistent with *Buckley*, authoring felony review documents is itself a prosecutorial act. In fact, Plaintiff's response fails to address precedent directly on point. *See, e.g., Hampton v. City of Chi.*, 349 F. Supp. 2d 1075, 1081 (N.D. Ill. 2004) (holding felony review prosecutor immune for interviewing witnesses, deciding what information was necessary for trial, *preparing felony review documents*, interviewing plaintiff, reading plaintiff his *Miranda* rights and approving charges against plaintiff) (emphasis added). To strip a prosecutor of immunity in the manner Plaintiff suggests not only goes against precedent, but would sanction a constitutional abnormality whereby a prosecutor is immune for initiating a prosecution maliciously and without probable cause, yet can be stripped of that same immunity for documenting the reasons behind his or her decision. Because this argument is untenable and contrary to the law, ASA Murillo (and Reardon) is immune from any claim predicated on the alleged fabrication of the fact sheet.

### 3. ASA Reardon is entitled to Absolute Immunity

As discussed above, any allegation predicated on the alleged fabrication of the fact sheet is protected by absolute immunity. What is left then is Plaintiff's allegation that Reardon fabricated White's testimony, thereby resulting in Plaintiff's pretrial detention.[5] However, because White's testimony is so implausible that no reasonable trier of fact would credit it, Reardon is entitled to absolute immunity for his work as a felony review ASA. *Spiegel v. Rabinovitz*, 121 F.3d 251, 257 (7th Cir. 1997) (holding that felony review ASA who reviewed the police reports, spoke with the police officers involved, *Mirandized* and questioned witnesses was entitled to absolute immunity).

---

[5] For the first time in his response, Plaintiff claims that Reardon fabricated Bond's statement as well. *See* P.'s Resp. at 13 ("Furthermore, Reardon's misconduct extended to the Bond statement and the CCSAO fact sheet."). In support, Plaintiff cites to paragraphs sixty-four (64) and sixty-five (65) of his SOAF in support of this proposition. *Id*. However, these purported facts, which are disputed, make no mention of Bond whatsoever. *See* Cook Cnty. Defs.' Reply to P.'s Statement of Add. Facts at ¶¶ 64,65. In sum, there are no facts to suggest that Bond's statement was coerced or fabricated by Reardon, or anyone else.

As previously discussed, testimony "can *and should be* rejected without a trial if, in the circumstances, no reasonable person would believe it." *See Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) (emphasis added); *see also In Re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). Plaintiff responds that White's testimony does not rise to this level because, as an unsophisticated juvenile, he should be given the opportunity to explain his bizarre testimony. P.'s Resp. at pp. 12-13. However, White, because he walked out of his first deposition when asked about the alleged threats made to him, *see* SOF, Ex. F at 158:9-160:5, was given, not one, but two chances to explain the alleged fabrication, in addition to addressing the reasons behind his guilty plea and inculpation of Plaintiff *while he was under oath*. *Id.* at 130:12–145:11; Ex. G. White's allegation, which he had ample opportunity to expound on, claims in sum that Reardon (and perhaps Thomas) falsified his statement by forging his signature onto portions of the statement, as well as somehow superimposing fabricated portions of his statement onto other parts of the statement containing his valid signatures. *See*, for more detail, Cook Co. Memo in Support of Summary Judgment ("Cook Co. Memo") at pp. 11-14, ECF No. 150. All the while, White claims he was continually threatened, even though Reardon, Thomas, Banks and the signed statement of Elizabeth Kellogg, *Whites own mother*, disavows his claims of coercion. *See* SOF at ¶ 36; *see also* SOF, Ex. N, ECF No 151-14. To be certain, White's bizarre testimony is not an issue of credibility in which two reasonable minds could disagree. Instead, his pitifully transparent attempt to recant his previous testimony, apparently made at the behest of Plaintiff, s*ee* SOF at ¶¶ 15, 51, is so bizarre, inconsistent and ineffectual that "no reasonable person would believe it." *Seshardi*, 130 F.3d at 802. Because White's testimony should be rejected as a matter of law, and because no other evidence suggests that Reardon engaged in any non-prosecutorial conduct, Reardon is entitled to absolute immunity.

### 4. Even without Immunity, Reardon is entitled to Judgment on all Claims.

Plaintiff concedes that, due to his acquittal, his due process claim is no longer cognizable. P.'s Resp. at p. 19. Furthermore, Plaintiff has failed to respond to the argument that no cognizable federal malicious prosecution claim exists. *See* Cook Co. Memo at pp. 15-16, ECF No. 150. As such, the argument has been waived. *Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003) (holding that arguments not made in response to summary judgement motions are waived). As such, what remains (sans the conspiracy claims) is Plaintiff's *Manuel* pre-trial detention claim and his state law malicious prosecution claim. However, whether the claim is based on the lack of probable cause, or predicated on the allegation of fabricated evidence, the existence of untainted probable cause for both the attempt murder and forgery charge defeat all of Plaintiff's claims. *Lewis v. City of Chi.*, 914 F.3d 474, 478-480 (7th Cir. 2019) (citing *Manuel II* for the holding that "claims for wrongful pretrial detention—*whether based on fabricated evidence or some other defect*—sound in the Fourth Amendment.") (emphasis added); *see also Coleman v. City of Peoria*, 925 F.3d 336, 350 (7th Cir. 2019) (holding that probable cause defeats to both Fourth Amendment claims and state law malicious prosecution claims). Therefore, ASA Reardon and Cook County are entitled to judgment on Plaintiff's pre-trial detention, malicious prosecution and conspiracy claims because: a) ASA Reardon alleged fabrication was not the cause of Plaintiff's detention because White's statement was not used to detain Plaintiff; b) probable cause existed to arrest Plaintiff for attempt murder, independent of the allegedly fabricated statement; and c) probable cause existed for Plaintiff's detention on the unrelated forgery claim.

a. *ASA Reardon Played no Role in Plaintiff's Arrest and Pretrial Detention.*

Plaintiff argues that "Thomas was the only witness before the September 2014 grand jury that indicted Hill" and that "Thomas' testimony that Hill shot at the victims was necessarily

founded on the false statements procured by Reardon ..." P.'s Resp. at p. 15. Aside from the fact that Plaintiff's conclusory argument is unsupported by any fact cited in the record, *id*., Plaintiff's assertion contorts the record and fundamentally misunderstands the role of a grand jury.

The grand jury, which can be empaneled for up to eighteen (18) months in Cook County, hears all evidence presented by the State's Attorney. 725 ILCS 5/2-113(a); 725 ILCS 5/2-114(a). Consistent with this edict, the grand jury heard testimony from Thornton and McReynolds on March 25, 2014, and Bond on April 8, 2014. SOF at ¶ 43. As the ASA presenting the testimony instructed the grand jury, each witness' testimony was relevant to the March 12, 2014, attempted murder, for which Plaintiff was a suspect. *See* SOF, Ex. V at pp. 2 (of 88), 28 (of 88), 58 (of 88), ECF No. 151-22. For Plaintiff to suggest that the testimony of these witnesses was only used against his co-defendant, Johnson, and not Plaintiff simply because he (unlike Johnson) was actively evading arrest for the very same allegation, is as baffling as it is erroneous. *Id*. at ¶ 44.

To be certain, on September 16, 2014, approximately two weeks after Plaintiff's arrest, Defendant Thomas testified before the grand jury. *See* SOF at ¶¶ 44, 47. Prior to his testimony, the ASA presenting Thomas' testimony explained that the purpose of Thomas' testimony was to *re-indict* the case to add the Plaintiff. *See* SOF, Ex. Y at p. 3 (of 9), ECF No. 151-25. During his testimony, Thomas testified that he learned Plaintiff had exited the vehicle and discharged a weapon. *Id.* at p. 5 (of 9). *This is exactly what Bond testified to on April 8th when testifying before the grand jury*. *See* SOF, Ex. V at p. 8 (of 88), ECF No. 151-22. In effect, Thomas testimony was nothing more than a summary of what had already been presented to the grand jury. In other words, as a re-indictment, there was no need to present any new evidence, including any alleged fabricated testimony from White, who never testified before the grand jury. Furthermore, unlike the written statements Bond, Thornton and McReynolds which all were introduced to the grand jury, Bond's

9

allegedly fabricated statement was never presented to the grand jury. *See* SOF, Ex. V at pp. 19-22 (of 88), ECF No. 151-22 (presenting Bond's written statement to grand jury as exhibit no. 9); *Id*. at pp. 45-50 (of 88) (presenting Thornton's written statement to grand jury as exhibit no. 9); *Id*. at pp. 79-83 (of 88) (presenting McReynold's written statement to grand jury as exhibit no. 9). Because there is no evidence to establish that any alleged statement of White was used to indict, arrest or detain Plaintiff, there is no causation. *See Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir, 2012) ("if an officer (or investigating prosecutor) fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then …. the action did not cause an infringement of anyone's liberty interest."). Therefore, because ASA Reardon's alleged malfeasance played no role in Plaintiff's pretrial detention, ASA Reardon is entitled to judgment on Plaintiff's pretrial detention and malicious prosecution claims.

      b.  *Probable Cause Existed to Arrest and Detain Plaintiff for Attempt Murder.*

In addition to ASA Reardon's lack of involvement in Plaintiff's detention, probable cause independent of the allegedly fabricated evidence also serves to defeat Plaintiff's Fourth Amendment and malicious prosecution claims. *Nugent v. Hayes*, 88 F. Supp. 2d 862, 869 (N.D. Ill. 2000) ("Even excluding all of the evidence Mr. Nugent claims is tainted or concocted and including all of the evidence that Mr. Nugent believes is exculpatory, the remaining evidence and testimony establishes probable cause … Therefore, his arrest and prosecution was lawful."); *Manning v. United States*, 02 C 372, 2006 U.S. Dist. LEXIS 84623, at * 94 (N.D. Ill. Sept. 28, 2006) (Kennelly, M.) ("In a malicious prosecution case in which the plaintiff contends that the defendant presented fabricated evidence or concealed exculpatory evidence, the issue of whether probable cause exists is evaluated by including the concealed exculpatory evidence but without considering the fabricated evidence.").

Probable cause exists if "the facts and circumstances within the officer['s] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989). Probable cause is "only a probability or substantial chance of criminal activity, not a certainty that a crime was committed." *Beauchamp v. City of Noblesville,* 320 F.3d 733, 743 (7th Cir. 2003) (internal citations omitted). To that end, "the complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Id*. However, 'in crediting the complaint of a reasonably believable witness or putative victim, the police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth.' *Id*.

In an effort to overcome the presumption of probable cause based on the grand jury's indictment of Plaintiff, Plaintiff primarily relies on two arguments: 1) that Bond's testimony is unreliable because Reardon "coerced Bond into signing a statement placing Hill at the scene of the shooting" and 2) there was no physical evidence that the shotgun Plaintiff allegedly used was fired. P.'s Resp. at pp. 14-17. As to the first allegation, there is absolutely no evidence that Reardon or anyone else coerced Bond into giving a knowingly false statement. Moreover, the citations to the record for this specious claim in no way establish this fact. *See supra* n.5. In fact, contrary to Plaintiff's assertion, the undisputed facts render Bond's statement highly trustworthy and sufficient to establish probable cause.

Upon arriving at the scene, Defendant Thomas, after speaking to one of the victims (most likely Bond), learned that the victims had been shot at by "E", "Lil Chicky" and a third suspect. SOF at ¶ 12. Defendant Thomas was familiar with Plaintiff (AKA "E") and "Lil Chicky" and

11

proceeded to where they lived. *Id*. at ¶ 16. Once they arrived, HPD officers encountered White and Johnson sitting in the shooting suspects' car which belonged to the Plaintiff. *Id*. at ¶17. Upon being taken into custody, it was determined that White was wearing a bulletproof vest. *Id*. at ¶ 19. A search of Plaintiff's vehicle uncovered five separate firearms and ammunition. *Id*. At this point, the investigating officers have an immediate outcry inculpating Plaintiff and two others, with one of the named suspects (White) considering Plaintiff to be his mentor. *Id*. at ¶ 15. Furthermore, as subsequent evidence establishes, the immediate outcry was correct in identifying both White and Johnson, both of whom were found heavily armed and located inside Plaintiff's vehicle near Plaintiff's residence shortly after the shooting. *Id*. at ¶¶ 14, 17.

While at the HPD, Thomas interviewed the three victims. During those interviews, Bond identified Plaintiff as one of the perpetrators of the shooting, claiming that Plaintiff was armed with a large gun known as a "bump." *Id*. at ¶ 22. Subsequent to Thomas' interviews, Reardon interviewed all three victims and reduced their statements to writing, which each signed. Bond's statement alleges that Plaintiff was present during the shooting. *Id.* at ¶ 31. Furthermore, both McReynolds' and Thornton's statements allege a third unknown subject was in the car with White and Johnson. *Id*. at ¶¶ 33, 34. Additionally, on March 17, 2014, HPD recovered video surveillance from the McDonalds that White claimed he, Plaintiff and Johnson visited just after committing the shooting. *Id.* at ¶ 41. Upon viewing the video, Defendant Thomas, who was familiar with Plaintiff, *id*. at ¶ 16, believed the video depicted Plaintiff together with White and Johnson inside the McDonald's, further corroborating Bond. *Id*. at ¶ 41.

On March 25, 2014, Thornton and McReynolds testified before the grand jury. *Id.* at ¶ 43. Consistent with their prior statements, both testified that there was a third unknown suspect in Plaintiff's car at the time of the shooting. *Id*. On April 8, 2014, Bond, *whose attorney was present*

*in the grand jury room*, testified before the grand jury, again implicating Plaintiff in the shooting. *Id.; see also* SOF, Ex. V at p. 2 (of 88), ECF No. 151-22. Coupled with the fact that Plaintiff was evading law enforcement, SOF at ¶ 44, probable cause existed to detain Plaintiff for the attempt murder, independent of any alleged fabrication. *See United States v. Brown*, 664 F.3d 1115, 1119 (7th Cir. 2011) (trier of fact may properly consider flight as evidence of guilt).

As for Plaintiff's attempt to impugn Bond with the fact that the shotgun had not been fired, the effort is feeble. First, even if the gun had not been fired, it is not unreasonable for Bond to have mistaken which gun Plaintiff used, particularly when he attempting to evade being killed. This is particularly true when also found along with the shotgun were four additional firearms, one of which was a .22 caliber Winchester rifle which could account for Bond's initial claim that Plaintiff was armed with a large gun known as a "bump." *See* SOF, Ex. E, ECF No. 151-5; *see also* SOF at ¶ 22. Moreover, the fact that the shotgun was found loaded when found is of no consequence as the two .38 caliber *revolvers* White admitted he and Johnson each fired six shots with were themselves loaded with six "unfired cartridges" when recovered and sent for ballistics testing. *See* SOF, Ex. F at 6:17-7:3; 82:1-14, ECF No. 151-6; *see also* P.'s SOAF, Ex. AA, ECF No. 161-28. In sum, the facts establish that Bond, *who had absolutely no motivation to lie when he identified Plaintiff*, provided, along with the other aforementioned facts, sufficient probable cause to detain Plaintiff. Because Plaintiff cannot overcome the grand jury's *prima facie* finding of probable cause, the Cook County Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment and state law malicious prosecution claims.

    c. *Probable Cause Existed to Arrest and Detain Plaintiff due to the Forgery Warrant.*

Even if Plaintiff were to run the gauntlet by circumventing immunity, establish that Reardon fabricated evidence which caused his deprivation, and establish that no independent

probable cause existed for Plaintiff's arrest for attempt murder, his claims can go no further. Indeed, they are unquestionably precluded by the Seventh Circuit's strikingly analogous opinion in *Norris v. Serrato*, 761 Fed. Appx. 612 (7th Cir. 2019).

In *Norris*, officers responded to a call alleging that the Plaintiff had committed retail theft. *Id*. at 614. Upon investigating, the officers learned that the Plaintiff had a warrant for his arrest on an unrelated charge. *Id*. As a result, Plaintiff was arrested for both the retail theft and the warrant. *Id.* Plaintiff was subsequently booked and remained in custody—"though the record does not show for which charge"—until he was released eleven months later after posting bail. *Id*. Norris was subsequently tried for retail theft and was found not guilty. *Id*.

Plaintiff filed suit against the officers alleging various state and federal claims, including false arrest and false imprisonment, with at least one of the claims being predicted on allegedly fabricated evidence. *Id*. In affirming the granting of summary judgment to the defendants, the Seventh Circuit held that probable cause is an "absolute defense" to claims for an allegedly unreasonable seizure, whether for false arrest or wrongful pretrial detention. *Id.* at 615 (internal citations omitted). Furthermore, because probable cause is an objective standard, Plaintiff's arrest "was lawful if defendants had probable cause to arrest him for *any offense*, regardless of the reason the police were called or the reason given for the arrest." *Id*. (emphasis in original). Finally, the Court noted that, Plaintiff's subsequent acquittal on the retail-theft charge did not undermine the conclusion that the arrest and detention were proper because the outstanding warrant established independent probable cause for Plaintiff's arrest. *Norris*, 761 Fed. Appx. at 615.

The facts of *Norris* are astoundingly similar to the case-at-bar. As with his attempt murder warrant, Plaintiff's forgery warrant is *prima facie* evidence of probable cause. *Coleman*, 925 F.3d at 351. Furthermore, like the Plaintiff in *Norris*, Plaintiff was taken into custody and booked at the

14

same time for the forgery warrant. *Id*. at ¶ 44. In fact, the case against Plaintiff is even stronger than that against the plaintiff in *Norris* because, unlike the record in *Norris*, the undisputed record in his case establishes that Plaintiff remained in custody for the forgery for the entire time he was in custody for the attempt murder. *Id*. at ¶ 50; *Norris,* 761 Fed. Appx. at 614 (noting that Plaintiff was booked and remained in custody for eleven months "[a]though the record does not show for which charge"). Plaintiff's attempts to dispute this fact are feeble and run afoul of LR 56.1(b)(3). *See supra* Section 1, pp. 2-3; *see also* P.'s SOF Resp. at ¶¶ 44, 50. Perhaps in recognition of how dispositive *Norris* is, Plaintiff argues that "Defendants cannot rely on an unrelated and separate forgery case with had nothing to do with the attempt murder" and, additionally, "[a]bsent the murder charges, Hill would have posted bond …" P.'s Resp. at pp. 18-19. As to the latter argument, per *Norris*, it is irrelevant what charge Plaintiff could've posted bonded on and, in any event, the claim is noticeably unsupported by any citation to the record. *Id*. As to the former, Plaintiff's statement is contrary to *Norris* and the Supreme Court precedent upon which *Norris* is predicated. *See Devenpeck* v. *Alford*, 543 U. S. 146, 153 (2004) ("The rule that the offense establishing probable cause must be "closely related" to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest is inconsistent with this precedent."). Because the forgery warrant provided probable cause, and caused Plaintiff to remain in custody on the forgery charge for the entire duration of Plaintiff's complained-of detention, ASA Reardon is entitled to judgment on Plaintiff's Fourth Amendment and malicious prosecution claims.[6]

*Wherefore*, the Cook County Defendants request that this Court grant their Motion for Summary Judgment, assess costs, and grant any further relief deemed just and equitable.

---

[6] As argued previously in the Cook County Defs.' memo, because Plaintiff's predicate claims fail, so too do his conspiracy claims.

Respectfully submitted,


 */s/ T. Andrew Horvat*
T. Andrew Horvat
Cook Co. Assistant State's Attorney
50 W. Washington, 5th Floor
Chicago, Illinois 60602
(312) 603-3362

## CERTIFICATE OF SERVICE

       I, T. Andrew Horvat, hereby certify that on July 7, 2020, I have caused a true and correct copy of the Cook County Defendants' Reply in Support of Summary Judgment to be sent via e filing to all counsel of record in accordance with the rules regarding the electronic filing of documents.

       */s/ T. Andrew Horvat*
       T. Andrew Horvat
       Cook Co. Assistant State's Attorney
       50 W. Washington, 5th Floor
       Chicago, Illinois 60602
       (312) 603-3362