UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EZRA HILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 17 C 4699 |
| CITY OF HARVEY, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court are Defendants City of Harvey, Gregory Thomas ("Thomas"), and Jason Banks ("Banks") (collectively, "Harvey Defendants") and Defendants Cook County, Illinois ("Cook County"), Liam Reardon ("Reardon"), and Ed Murillo ("Murillo") (collectively, "County Defendants") motions for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court will deny the Harvey Defendants' motion and grant the County Defendants' motion in part.

## BACKGROUND

The following facts are taken from the record and are undisputed unless otherwise noted.

Plaintiff Ezra Hill ("Hill") is a resident of Harvey, Illinois. At the time of the alleged incidents, Hill was twenty-seven-years-old and worked as a truck driver. At

some time prior to being a truck driver, Hill worked as a booking officer for the Harvey Police Department ("HPD").

Defendant City of Harvey is a municipal corporation under the laws of the State of Illinois. Defendant Thomas was employed by the City of Harvey as a detective with HPD. Defendant Banks was the Deputy Chief of HPD.

Defendant Cook County is a governmental entity operating within the State of Illinois. The Cook County State's Attorney's Office ("CCSAO") is part of the Cook County government. Defendants Reardon and Murillo were Assistant State's Attorneys ("ASA") with the CCSAO.

On March 12, 2014, at approximately 10:31 a.m., Eric Bond ("Bond") was driving a stolen Honda Civic with Alquan McReynolds ("McReynolds") and Ahmad Thornton ("Thornton") on Center Avenue north of East 146th Street in Harvey, Illinois. Multiple occupants in an Oldsmobile Intrigue owned by Hill drove up behind the Civic. Due to a pre-existing conflict, the occupants exited the vehicle and shot at Bond, McReynolds, and Thornton. Bond drove off and crashed a block away and was subsequently apprehended by HPD. The occupants of the Oldsmobile proceeded to a nearby McDonalds.

The exact occupants of the Oldsmobile are contested by the parties. All parties agree that Andrew "Chicky" White ("White") and Antonio "Shady" Johnson ("Johnson") were in the car. Defendants argue that the vehicle was also occupied by

Hill. However, Hill says that statements identifying him at the scene were coerced and fabricated and that there is no other evidence to place him at the scene.

Thomas and Banks were the first to respond to the calls of the shooting. They learned of the description of the Oldsmobile at the scene and proceeded to White's home at 146th and Des Plaines. Thomas and Banks arrived at White's home between 10:45 and 11:00. They found White and Johnson sitting in the Oldsmobile. After arresting White and Johnson, Thomas and Banks searched the Oldsmobile and found a revolver, a pistol, and a Benelli M4 semi-automatic shotgun ("the shotgun") in the trunk. The shotgun was fully loaded with six live rounds.

After the search, White and Johnson were transported to the HPD station. There they participated in an identification lineup and were subsequently separated. Johnson was placed in a cell and White was taken to an interrogation room. Hill alleges Thomas, Banks, and Reardon then concocted their scheme to fabricate the case against Hill.

McReynolds was the first person to be questioned by Thomas and Reardon at approximately 5:03 p.m. on the evening of March 12. McReynolds identified Johnson and White in a lineup. He also identified Hill in a photo array. Thomas's interview report says that McReynolds placed Hill at the scene. However, Hill argues that McReynolds's signed statement given that night does not explicitly place Hill at the scene. McReynolds's statement says:

> Alquan states that he was also shown a photo array containing 6 photographs. Alquan states that he knew one of the individuals in the photo array by the nickname "E." Alquan states that he now knows E to

3

>be Ezra Hill. Alquan states that he has seen Hill on two previous occasions."

1:17-cv-4699, Dkt. # 159-9, pg. 3. Additionally, Hill says that Thomas and Reardon both conceded at their depositions that McReynolds's statement did not place Hill at the scene. Further, McReynolds testified that he did not see Hill at the scene and that he was instructed to identify Hill in the photo array.

After interviewing McReynolds, Thomas and Reardon questioned Thornton around 5:17 p.m. Thornton also identified White and Johnson in the lineup and Hill in a photo array. Thomas's report also states that Thornton placed Hill at the scene. Again, however, Hill contends that Thornton's statement, which is identical to McReynolds's, does not explicitly identify Hill at the scene. Further, Thornton testified before the grand jury investigating the shooting that he never identified Hill as being at the scene.

Following their interview with Thornton, Thomas and Reardon questioned Bond. Bond admitted that he gave a fake name to the officer that arrested him because he had an outstanding warrant. When Bond was arrested, he was found with seven small bags each containing marijuana and a sock filled with ammunition. Thomas's report of the interview states that Bond saw Hill with "a large gun which bond describes as a bump." Thomas also noted that Bond said all three suspects were firing guns. Bond was the only occupant of the Civic to sign a statement explicitly placing Hill at the scene. He

claimed that Hill exited the driver's side back seat of the Oldsmobile and fired shots from behind Johnson.

However, Hill says Bond was coerced into signing the statement placing him at the scene. Hill says that Bond, who was sixteen years old at the time, was never charged for possession of the ammunition or marijuana, driving a stolen vehicle, or resisting arrest in exchange for his statement. Reardon testified at his deposition that the charges "may have" come up during the interview.

White was the next person to implicate Hill. White, who was fifteen years old at the time, was held in the interview room for thirteen hours before signing a statement at 12:22 a.m. Thomas spent "quite a bit of time" with White during the thirteen-hour period but did not document his interviews with White like he did with Bond, Thornton, and McReynolds. In his signed statement, White's said that he, Hill, and Johnson were returning to Harvey after shoveling snow in a nearby town when they saw Bond driving a car with three other individuals. White stated that they got out of the Oldsmobile and shot at Bond's car. White says he fired six shots with a .38 Smith and Wesson Long Nose Revolver, Johnson fired 6 shots with a black .38 caliber Snub Nose Revolver, and Hill fired 4 shots from the shotgun. White's mother, Elizabeth Kellogg ("Kellogg"), was present at the time of the statement, but was not with White for the majority of the thirteen-hour detention.

Hill again argues that White's statement was coerced. Hill says White was particularly vulnerable because White was only fifteen and was held for thirteen hours.

5

Hill says that Reardon, Thomas, and Banks threatened White that he would be charged as an adult if he did not cooperate. Further, White testified at his deposition that Banks instructed him to say that Hill was present and fired the shotgun despite telling Thomas that Hill was not present. Hill argues that there is no evidence that the shotgun was ever shot; it was recovered fully loaded and there were no holes in the Civic created by shotgun pellets.

An arrest warrant for Hill was denied on March 12 and again denied on March 17. HPD requested the McDonald's surveillance video from March 12 and received it on March 20. HPD then provided the McDonald's video to the CCSAO. Thomas informed the CCSAO that he identified Hill in the McDonald's video on March 20. Murillo then reviewed the McDonald's video and approved an arrest warrant for attempted murder for Hill on March 20.

However, Hill contends that he is not in the McDonald's video. Murillo was unable to identify Hill in the video at his deposition. Thomas and Murillo eventually identified Hill in the video later in this litigation. Hill, though, argues that the timestamp on the video indicates that the people Thomas and Murillo identify as Hill, White, and Johnson, were present in the McDonald's at 11:14 a.m. Hill points out that White and Johnson were arrested by Thomas and Banks at White's home between 10:45 and 11:00 a.m. and, therefore, could not have been present in the McDonald's at 11:14. The McDonald's video was not used at Hill's criminal trial.

6

On March 25, Thornton testified before the grand jury investigating the shooting. Thornton's testimony did not place Hill at the shooting; instead he stated that only White and Johnson were present. McReynolds testified before the grand jury on the same day. McReynolds also testified that he did not see Hill at the scene. During his grand jury testimony, McReynolds signed the photograph he originally identified as Hill in the photo array indicating that he did not see Hill at the scene. Bond testified before the grand jury on April 8. Consistent with his statement to HPD, Bond testified that Hill was present at the shooting. No indictment was sought by the CCSAO after any of their testimony.

Hill was arrested on September 4, 2014, in Dyer, Indiana, and subsequently extradited to Illinois. Thomas then testified before the grand jury on September 16. Thomas testified that Hill fired the shotgun into the vehicle that Bond, McReynolds, and Thornton were in. Hill was indicted by the grand jury on September 16, 2014. 31 months later, Hill was tried for attempted murder and was acquitted after a one-day trial and 30-minute jury deliberation.

Based on these events, Hill filed his amended complaint on June 18, 2019, alleging unlawful pretrial detention in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983, conspiracy to deprive constitutional rights under Section 1983, a municipal liability claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) against the City of Harvey, and state law claims of malicious prosecution and civil conspiracy. On May 26, 2020, the County

7

Defendants moved for summary judgment under Rule 56. That same day, the Harvey Defendants also moved for summary judgment under Rule 56.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704–05 (7th Cir. 2011).

## DISCUSSION

The County Defendants argue that they are entitled to summary judgment because the undisputed evidence shows that Hill cannot prove his constitutional, malicious prosecution, and conspiracy claims, and that Murillo and Reardon are entitled

to absolute immunity. Similarly, the Harvey Defendants argue that they are entitled to summary judgment because the undisputed facts show that Hill cannot prove his constitutional, malicious prosecution, conspiracy, and *Monell* claims, and that Thomas and Banks are entitled to qualified immunity and immunity under the Illinois Local Government and Government Employees Tort Immunity Act, 745 ILCS § 10/2-202 ("Immunity Act"). We address each argument in turn.[1]

## I.  Fourth Amendment and Malicious Prosecution Claims

Defendants argue that Hill cannot succeed on his Fourth Amendment or malicious prosecution claims because of the existence of probable cause. Hill argues that a reasonable jury could find that there was no probable cause to arrest or prosecute Hill. We agree with Hill.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. "A person is 'seized' whenever an official 'restrains his freedom of movement' such that he is 'not free to leave.'" *Lewis v. City of Chicago*, 914 F.3d 472, 476 (7th Cir. 2019) (quoting *Brendlin v. California*, 551 U.S. 249, 254–55 (2007)). "The general rule is that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime." *Id.* (quoting *Bailed v. United States*, 568 U.S. 186, 192 (2013)) (internal alterations omitted).

---

[1] Hill concedes that he no longer has a due process claim under the Fourteenth Amendment after the Seventh Circuit's ruling in *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019). Therefore, his claims for unlawful pretrial detention rest exclusively on the Fourth Amendment. *Id.* at 478.

9

To establish a claim of malicious prosecution under Illinois law, Hill must prove five elements: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 26.

Disputed evidence precludes summary judgment. For example, Hill's arrest was predicated on the statements of White, Thornton, McReynolds, and Bond and the McDonald's video. However, the circumstances surrounding this evidence call doubt upon their reliability. Several of the witnesses recanted their statements and testified that they were instructed by Defendants to implicate Hill. Hill proffers evidence regarding Bond's statements that may indicate that he was coerced into implicating Hill. Further, Hill raises questions regarding the McDonald's video that ultimately led to the approval of his arrest warrant.

Thus, a jury must weigh the evidence and determine witness credibility to determine whether probable cause to arrest and detain Hill existed at the time of his arrest. A reasonable jury could find that the Defendants could not reasonably rely on the evidence and therefore there was no probable cause to arrest and prosecute Hill. Accordingly, Defendants are not entitled to summary judgment on Hill's Fourth Amendment or malicious prosecution claims.

## II. Conspiracy and *Monell* Claims

Defendants argue that Hill's conspiracy and *Monell* claims fail because he cannot establish an underlying constitutional violation. We disagree.

To prevail on a conspiracy to deprive constitutional rights under Section 1983, Hill must show: (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Under Illinois law, Hill must show (1) the existence of an agreement between two or more persons (2) to participate in an unlawful act or a lawful act in an unlawful manner, (3) that an overt act was performed by one of the parties pursuant to and in furtherance of a common scheme, and (4) an injury caused by the unlawful overt act. *Lewis v. Lead Indus. Ass'n*, 2020 IL 124107, ¶ 20.

A government entity can be held liable under Section 1983 when the execution of a government policy or custom inflicts an injury on a plaintiff. *Monell*, 436 U.S. at 694. However, a municipality cannot be held liable solely on the grounds of *respondeat superior*. *Id* at 691. "The Supreme Court has recognized three particular grounds on which a municipality can be held liable under § 1983. There must be: (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an

allegation that a person with final policy-making authority caused a constitutional injury." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

The disputed facts present in Hill's Fourth Amendment claim also prevent summary judgment on Hill's conspiracy and *Monell* claims. As discussed above, there are disputed facts regarding the existence of probable cause to arrest and detain Hill. Thus, a reasonable jury could find that Defendants deprived Hill of his constitutional rights under the Fourth Amendment. Further, a jury could find that Defendants fabricated evidence or coerced statements from the co-defendants and witnesses in furtherance of an agreement to ultimately get Hill convicted for the shootings. Additionally, the jury could find that the constitutional violation was performed by Banks, a Deputy Chief of the HPD. Accordingly, Defendants are not entitled to summary judgment on Hill's conspiracy or *Monell* claims.

## III. Immunity

The County Defendants argue they are entitled to absolute prosecutorial immunity. The Harvey Defendants argue they are entitled to qualified immunity and immunity under the Immunity Act. We address each in turn.

### a. County Defendants

Reardon and Murillo argue that the undisputed facts show that they are entitled to absolute immunity as prosecutors. Specifically, Reardon argues that he is entitled to absolute immunity because he acted as a prosecutor and not an investigator, and that White's testimony that he never told Reardon that Hill was present at the shooting

12

should be rejected as a matter of law. Murillo argues that he is entitled to absolute immunity because he did not conduct an independent investigation, but only reviewed evidence provided to him by HPD. In response, Hill argues that there is evidence showing that Murillo and Reardon were acting as investigators and not prosecutors. We agree with Hill that the evidence is not undisputed that Reardon was acting only as a prosecutor. However, we agree with Murillo that he is entitled to immunity.

Prosecutors have absolute immunity for their core prosecutorial actions, but the degree of immunity that prosecutors are afforded depends on their activity in a particular case. *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012). Absolute immunity is afforded to prosecutors only for the acts they commit within the scope of their employment as prosecutors. *Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014). However, a prosecutor's duties often go beyond strictly prosecutorial work to include investigation, and when they do non-prosecutorial work, they lose their absolute immunity and receive only qualified immunity.[2] *Id.* at 1111.

The facts are disputed as to whether Reardon was acting as a prosecutor or an investigator. First, we do not believe that White's testimony is such that "no reasonable person would believe it" as Reardon suggests. *See Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) ("testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it."). Given that the disputed facts

---

[2] The County Defendants do not argue that they are entitled to qualified immunity.

13

suggest that witnesses, such as Bond, may have been influenced by Reardon into implicating Hill, it is not wholly unreasonable for a jury to believe White's testimony. Additionally, the disputed facts suggest that Reardon may have been involved in the investigation of the shooting while he was at the HPD station. Determining whether Reardon acted as a prosecutor or investigator, therefore, requires determining witness credibility and weighing evidence, which are jobs best left to the jury. Accordingly, Reardon is not entitled to summary judgment based on immunity.

However, the undisputed facts indicate that Murillo is entitled to prosecutorial immunity. Murillo's only involvement was that he approved the charges against Hill based on the evidence that was provided to him by Thomas. This action is squarely within his role as a prosecutor within the Felony Review Unit of the CCSAO. There is no evidence that Murillo either knew the evidence was possibly falsified or that participated in any alleged falsification of evidence. Further, there is no evidence that Murillo acted as an investigator. Accordingly, Murillo is entitled to summary judgment based on absolute prosecutorial immunity.

  b. **Harvey Defendants**

The Harvey Defendants argue that they are entitled to immunity from Hill's state law claims under the Immunity Act because the presence of probable cause prevents any finding of willful and wanton conduct. The Harvey Defendants also argue they are entitled to qualified immunity for Hill's federal claims because Hill cannot make out a violation of a constitutional right. Hill argues that the Harvey Defendants are not

immune under the Immunity Act because they acted willfully and wantonly to manufacture probable cause. Hill further argues that a reasonable jury could find that his Fourth Amendment rights were violated. We agree with Hill.

The Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. "[S]ection 2-202 immunity is a limited immunity" and its dimensions "are narrower than the scope of a police officer's employment of his performance of official functions and duties." *Aikens v. Morris*, 145 Ill. 2d 273, 281 (1991). "[A] public employee is not afforded section 2-202 immunity for all activities in the performance of his or her duties." *Id.* at 278. For the reasons previously discussed, disputed facts exist with Hill's underlying Fourth Amendment claim. Thus, a reasonable jury could find that the Harvey Defendants acted willfully and wantonly to manufacture evidence implicating Hill in the shootings.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This requires the Court to make a two-step inquiry: (1) whether the facts make out a violation of a constitutional right; and (2) whether the right was clearly established at the time of the alleged misconduct. *Id.* at 232. For the reasons set forth above, we

believe that a reasonable jury could find that Hill's right to not be held in pretrial detention without probable cause based on the fabrication of evidence under the Fourth Amendment was violated. This right has been clearly established since 1978. *Lewis v. City of Chicago*, 914 F.3d 472, 477 (7th Cir. 2019) ("It has been clear since at least *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), that falsifying the factual basis for a judicial probable-cause determination violates the Fourth Amendment."). Accordingly, the Harvey Defendants are not entitled to summary judgment based on immunity.

## CONCLUSION

For the reasons mentioned above, the Court denies the Harvey Defendants' motion for summary judgment (Dkt. # 154) and grants the County Defendants' motion in part (Dkt. # 149). Status is set for 10/22/2020 at 9:50 a.m. It is so ordered.

Dated: 09/29/2020

_____
Charles P. Kocoras
United States District Judge